Our first case up this morning is 417-0157, People v. Lumsargis. Before the appellant is Attorney Michael Zoff. Before the appellee is Attorney David Manchin. Mr. Zoff, may I proceed, sir? Thank you, Your Honor. Please, the court. Counsel. Mr. Manchin, when I first began to read through this file and did the research, I was stunned to realize that Mr. Manchin found these cases. The last time any court talked about bribery was 1944 under Chapter 38 and then a 1977 case. So when we look at the standard of any rational trial, to some extent we have to examine the location where the offense was charged. Vermont County, Danville, Catlin, Tilton, Westville. These little towns surrounding are quite different than what you could or might find in Champaign, Sagamon, or McLean County. And the reason that's important in our view is that the form of communication was quite crude. When Ryan Gibaldi approaches Mr. Lumsargis, they're talking about different ways of handling different traffic violations. And there's some general conversation. Ryan Gibaldi suggests to Mr. Lumsargis, hey, if I get this done for you, would there be a state dinner in it for me? And Mr. Lumsargis, both in his testimony and through the evidence, says, sure, why not? We then have a second conversation with Ryan Shull. And Ryan Shull is a Tilton police officer slash Catlin public works officer. Not officer, but employee. And through different time periods, through the winter of 2013 and 2014, they interact. And there's conversations about a variety of things. And one of the things that is brought up in February is Lumsargis suggesting to Ryan Shull, hey, there's a driver that goes from Danville, the Wild Wings, through the Catlin-Tilton Road, and she might be DUI. Here's her license plate. Check that out. Oh, and she might have a 14-year-old in the back seat, which probably isn't a seat belt. And she's got an instructor windshield, and she speeds all the time. You might want to check that out. Ryan Shull says, well, is there a state dinner in it for me? And Lumsargis says, sure, why not? Conversation ensuing from the conversation that Ryan Gibaldi had had earlier with Mr. Lumsargis. Now, as the evidence showed, the state police and the vehicle code go hand in hand. Those troopers live for that. And thank God that they do. Because what they learn is a sophisticated method of both suppressing traffic violations, issuing citations, and the ability of stopping vehicles properly. Throughout the entire testimony, every person, Gibaldi, Shull, and Mr. Lumsargis, conceded that all Mr. Lumsargis said was you might find a violation here. He never mentioned Mary Bailey's name. And the one time that her friend was stopped, Linda Ledoux, it was unnoticed to Mr. Lumsargis. He issued a traffic citation that was in there. Now, in the meantime, there's a lot of drama. No question about it. But the chief of the Tilton Police Department, Mr. Steve Cornett, presented by the state, testifies in my questioning, was there any policy of a Tilton police officer that prohibited them from receiving gratuity? He said no. Well, the cases about bribery were long before we had crime stoppers or sending in tips or officer of the month or any of these other things that we consider to be rewards for law enforcement doing a job well. Rewards for citizens giving information to law enforcement so that they can then take them out. But again, reasonable suspicion and probable cause were always the standard for the stop. No evidence at any time said that, hey, you give her a citation whether or not she committed a crime or not. That was never said. The stops were all based upon observations. So all of this suggests at one point, Sarah Carlson, who had just came over from Champaign County as a prosecutor, asked Mr. Linsarge on the stand, well, did you ever talk to anybody about this to see whether it was okay? And he said, well, yeah. I knew the Tilton Police Department didn't have a policy against it. Well, did you talk to anybody in the state police? As a matter of fact, I did. I talked to Master Sergeant Chad Edwards and I talked to Master Sergeant Thompson. These are two individuals that by stipulation testified that at no time during my client's 13-year career with the state police had he ever been investigated, let alone charged, with falsifying a report. So now we have a veteran trooper dealing with less trained police officers and somehow an offhand suggestion becomes the basis for a conviction for a Class II felony. Not one, but four. May 16th and May 22nd. Not only do we have a de minimis amount exchanging hands, and in fact, it didn't even exchange hands. The two cases cited by the state, and I don't disagree with them, were $400 bribery and $100 bribery. Yeah, 50 years ago. So now we have a situation where the Vermont County State's Attorney's Office, at the request of the investigative division of the Illinois State Police, suggests, well, let's get an eavesdropping device. Now, I've obtained those devices. They're not easy. But for some reason, they thought they needed to elevate this state dinner bribery case to the level of the eavesdropping. So then we have Ryan Shull wired up. Ryan Duvaldi refused to do it because he thought it would compromise him. And then Shull, throughout the testimony, encourages Mr. Lim Sargis. Now, there's some texts that go back and forth, and each side explains those texts differently. Another issue that obviously could not have been handled 50 years ago in the last bribery cases that have been cited. So what do we do with texts when they're presented as evidence? I mean, if it's conversation, at least you can see the demeanor of the others. Unless you have younger children, like I do, you need them to help you interpret electronic communications. The shorthand, the statements, the lack of any syntax or English language equivalent. What does that mean? Sargis says to Shull, get it done. Multiple interpretations of that. What about the interpretation of hard copies only, even if there's no DUI? Or you're a chicken shit motherfucker who sits in the office all day. I'm not just talking about being unseemly. I'm talking about the tenor that you can read into that, regardless of the language. If you're the recipient of those, are you being pressured to do something? And if I'm being asked by a state trooper to issue hard copies, isn't that taking away my discretion and my choice to issue a warning or to do whatever? To some extent, yes. On the other hand, if you look at Ryan Gibaldi's testimony, he got similar emphatic statements. Not with the MF, but similar. And Shull testifies, well, I was afraid of retaliation. So I asked Gibaldi, I said, okay, you said no. Yes. Okay. And what happened? I said, what do you mean what happened? I said, were you stopped for an offense? No. Was any of your family members stopped for an offense? No. So I would suggest. It's in the focus on what was said and the intent in which it was said, not on whether or not the person to whom it was said had the gumption to say no. I think part of it, yes, but if you want to say, okay, apples to apples, we have one officer in a small-time department, we've got another officer in a small-time department, the same amount of, quote, unquote, pressure, if you will. I don't understand if it would be a bribery for Officer A, but not for Officer B because he rejected it and took his chances with what would happen if he didn't comply. How does that make it any less for Officer A? I'm suggesting that the terminology the sergeants used was hyperbole and that it was the give and take between officers, the give and take. That's not an unreasonable position, but why shouldn't it be left to the jury to determine what this all means in the context? In fact, wasn't all of this not only before the jury but argued to the jury? It's actually the same argument you're making to us now? Oh, certainly. Certainly. But in this instance, when you have Shull making the suggestion when it was Gibaldi that did it the first instance, and Shull pushes it and pushes it, I mean, it clearly is Shull jazzing my guy up, not an excuse but part of the context. And we get to this area where there's an exchange of cop, I call it cop talk. It might be something else. And to answer your question, Your Honor, the idea that I want a hard copy is emphasis. It's not necessarily a demand, and my point is that the officer could have said, I'm not going to do it. I'm not going to do it. Or do what he did and say, okay, I gave her a ticket. And then off we go. But the ability to say that a $13 chicken dinner at the Possum Trot is a bribe is unreasonable. I mean, it is, you know, when you look at this file, the effort that the state put into it, the extent to which Shull continued to have contact. Why are you so critical of the effort the state put into it? It seems to me in a best-case scenario, your client's behavior was pretty bad, unprofessional. It was unprofessional. Well, then, you know, the prosecutor hears about all this and says, well, this is a bad cop. And let's proceed to see if we can develop a case to prosecute. If it had been for more, if it had been more significant, if it had been not one instance between May the 16th and May the 22nd of a 13-year career, I said yes. But the answer was, knock it off. Don't do it. He spoke to both of his superiors, two master sergeants, and says, is it okay if I do this? So to an extent, he's saying, okay, can I continue to pursue this matter? It's Gibalti that comes up with steak dinner language. And then all of a sudden this turns into a bribery case? That's beyond the pale, particularly in 2017 when we've got bribery cases which were legitimate briberies. But we don't know what bribery is now. I mean, do you take into account, you say, we don't care if you take gratuities. I'm the chief of the Tilton Police Department. The state police, master sergeants, not just fellow officers say, sure, as long as you're based upon probable cause and reasonable suspicion, there's no reason you can't pursue it. And sergeants, to an extent, had permission from his department to actually make the stops themselves. In an exercise of professionalism, in my view, he chose not to do that. He went through other officers who were familiar with that area in order to prevent what he deemed to be a potential tragedy. The basis of the breakup with Mary Bailey was her driving, the fact that she drove drunk. He was concerned about that. Now, he may have misspoke or over-lined a little bit. But again, beyond a reasonable doubt, a Class 2 felony? How did we get there? Assuming for the moment we accept that it's overcharging, isn't that what it is? Overcharging, which is entirely in the bailiwick of the state's attorney, if they can prove their case. And a jury thought the case was proved. And a jury in 2016, 2017, they know how much meals cost. It is de minimis in terms of tickets to the World Series. But it's still a gratuity, or beyond a gratuity. I mean, I don't... If the elements of the crime are proven, and the jury believes the witnesses, are we supposed to criticize the state for going after the case and for charging more than they needed to? To make their point? I would suggest two things. One, an opinion examining the bribery statute itself. And saying, okay, there's a vacuum here. There's a 60-year vacuum on what should or shouldn't be charged. And without blaming or finding fault with the Romanian County State's Attorney's Office, say, you know, 100 years has passed. We now know the definition of violating a body. We all presumed that we knew what bribery was. I did as well. Then I'm looking through this and saying, there's got to be more. There's got to be more. No. It is a $13 steak dinner that morphed into a chicken dinner at the Possum Tribe. I mean, how can that be a Class II felony in this day and age? Well, it's a $17.95 steak dinner at a nice restaurant. But it happens to be an early bird special. So it's $17.95 instead of $32. Granted that part. What I'm suggesting is that if your department has a policy that says you can accept gratuities, that is within the realm of acceptable behavior. I asked Mr. Shull about, let's say you were made Officer of the Month, and you were told that you were going to be treated to a lunch. Could you do that? He avoided the question. Maybe he didn't understand it. But Officer of the Month would be either an administrative or a community decision. Some entity would be giving you that award. And the person who's giving you the award would just be a representative of that entity. And it might be a $25 gift certificate. It might be, if you were a football player, it's a star on your helmet. I mean, that's different than a police officer, which I assume this is the way the jury read the case. This is an officer who was seeking a reprisal against an ex-girlfriend. They did not accept his desire to make the road safer. If they had done so, wouldn't it have been a not guilty? Or more likely to have been? Given the instructions and the lack of definition, perhaps. But my point is, this Court, the legislatures, need to do something to give some guidance out there. Because it's not there. If we'd have been clear about that, somehow there would have been some case law, there wouldn't have been a trial. My time's up, unless there's other questions. Yeah, until it's read, you have a few more minutes. When it gets read, your time's up. Well, I asked for a five-minute warning. You have an opportunity to address this again in rebuttal. Okay. Thank you, Counsel. Mr. Manchin? Good morning, Your Honors. Good morning. Court, Counsel. Counsel. In this case, the bribery statute says, with the intent to influence the performance of any act related to the employment or function of a police officer, he promises or tenors to that person any property or personal advantage which he knows the other's not authorized to act. This case is the exact definition of bribery under the statute. No further clarity is needed. There is no requirement that there be a $5,000 bribe to let me off from an arrest, or as opposed to a steak dinner to make an arrest. Counsel's suggested that it was the recipients that asked, hey, if I stop your girlfriend, will I get a steak dinner? That is not my recollection of what the testimony was at trial. The testimony was at trial was that the defendant offered several different people steak dinners if they would make a stop. He also suggested many different grounds for making a stop, from drunk driving to speeding to child endangerment to a blocked windshield. As Justice Neck pointed out, the jury could just simply believe this was a guy trying to harass his ex-girlfriend and trying to influence his other fellow officers to make the stop. That is the purest form of bribery. I'm paying you to make a traffic stop, to make this specific traffic stop. If you make this specific traffic stop of this specific person, I will pay you. I don't think there's – even if he thinks the guy is a cheap target for making the payment. Do we know or does it matter that this was a case in which efforts were made to have Mr. Lomzargas call it a great career and just walk away from the job without having to be prosecuted for this offense? He certainly is not going to be able to continue as a cop having been convicted of it. There's nothing in the record or to my knowledge about telling him, hey, you resign, we'll drop these charges and things like that. There's nothing in there like that. But – How long have you been a police officer? I have not been. 17 years or something? Yeah. He's been there – I can't recall, but he was a long – officer of longstanding. But by the same token, he has to know that he cannot be harassing his girlfriend by using his other officers to make stops. Especially when he's telling them – with respect to the warrant, he's talking to them in the morning saying, this car with this license plate will probably be coming through this area. Well, Mr. Zoff was candid enough to admit that this is at best bad form and bad behavior for a police officer. But the argument is, why are you charging him with this serious felony, which is a serious felony? And I guess the second part of my question is, would it matter? I think, as Justice Connacht said, that's really not our call. That's the State's Attorney's call. Mr. Zoff criticized the State's Attorney implicitly, at least, for bringing it. But I don't know that there's anything we can do. It's not our purview to decide whether this was appropriate. That's exactly right. It's the prosecutor's decision whether to bring the charges, what charges to bring. And the evidence was presented to the jury. The jury's properly instructed as to the elements of bribery. And the jury believed that the defendant was acting improperly. The defendant's suggestion that there are no guidelines or no – nobody knows what bribery is today because it hasn't been since 77 since there's been a case. The officer's testimony was, yeah, Tilton doesn't have any policy, to my recollection, to my knowledge, regarding gratuities, but it is state law. And if you look to state law, there are clear guidelines as to what public employees or public police officers can and cannot accept. I cite them to them in my brief. They admittedly don't directly apply to these officers because they are not state employees. They are employees of the city. But I submit that the conduct that is involved here clearly falls within conduct that was barred by those statutes if these had been state police officers. So his suggestion that this court needs to render a decision that sends a message telling everybody, all right, this is what bribery is. This is what bribery is not. This is what kind of gratuities you can accept. This is what kind of gratuities you cannot. Counsel has made reference to Crime Stoppers and to other such things. But no evidence was presented at the trial court that police officers are even eligible to receive payments through Crime Stoppers, whether Crime Stoppers is limited to, you know, non-police officers. So this whole argument about Crime Stoppers is a non-factor because it was never presented to the jury. The jury never had to consider, well, okay, if you can receive something from Crime Stoppers, why can't you receive, why can't a fellow officer pay you to make a stop? There's no evidence of that. There was also no evidence at trial regarding, counsel suggests that he was acting in good faith to get a drunk driver off the road and was trying to stay out of himself. There's absolutely no evidence of that in this trial record. There's no evidence of the ex-girlfriend's driving history or no evidence that she's known to be a drunk driver. The only testimony is that he went to these other officers and said, hey, if you stop this car, my ex-girlfriend, I will give you steak dinner. You can stop her for whatever, for driving, for speeding, driving under her influence, obstructed winds, or child endangerment. This is a guy who's just ticked off. The jury can conclude this is a guy who's ticked off his girlfriend, wants other officers to harass her, and is willing to pay them to do that. Paying someone to influence them in the exercise of their official duties is the exact definition of bribery under the statute. And that is what the jury found, and there's simply no basis upon which to disturb that determination. Whether or not the prosecutor should have brought the charges or overcharged does not affect the sufficiency or the amount of evidence presented for the jury's conclusion. So I submit that the conclusion of the jury should be affirmed. The arguments made on appeal today and in the brief and at trial are virtually the same. Namely that, hey, I was not doing anything wrong. This is just chitchat between buddies, and the jury just didn't buy it. They said, okay, the definition of bribery is offering with the intent to influence the performance of acting your duties. There's the intent to influence them. Okay, you make the stop, I will pay you. That's bribery. The fact that he's a cheap briber doesn't matter because the statute does not contain any monetary amounts. There's no further questions? Seeing none, thank you, Mr. Manson. Thank you. Mr. Zilf, any rebuttals, sir? Yes, Your Honor. Okay. Perhaps I missed both. The reason I brought up Crimestoppers is to suggest that it is not okay. It's encouraged for people with vendettas to contact the police and drop a dime on them, and obviously they're not painful anymore. So it's condemned for unsolicited, pay your attention to this person because I don't like them. We've considered that okay. The other part about this, and the reason it's not vindictive based upon the evidence, which the defendant testified to, I disagree with counsel about that, is the fact that he never mentioned her name. He told her plate. He told her route of travel. He told her likely destination. Why does that matter? I'm not sure I understand. It matters because, in effect, Linsardius was doing what Crimestoppers does as well. I'm going to give you a tip. I'm not asking you to stop her just because. I'm not asking you to stop her because I don't like her. But he actually said, I'm not asking. Get it done. When a senior state trooper says that to a small-town police officer or a part-time police officer, that rises to the level of, I have limited choices, and whatever choice I make, there might be a consequence. To some extent, Your Honor, Ryan Shull riveted that up. He did. He was acting as an informant. He was motivating Linsardius in circumstances where he initiated the contact. He made it more of a, you know, that fucking pisses me off too. What are we going to do? Kind of this little, you know, short guy encouraging the big bear to move further. But that certainly can't be part of the crime when you talk about the events of May the 16th and May the 22nd. I don't know that it's part of the crime, but it's part of the context. Well, it certainly paints a picture to the jury as to motivation and intent and what your client wanted to accomplish. Well, but again, he never said stop her without probable cause of reasonable suspicion. To answer your question, Your Honor, Mr. Linsardius was arrested on May 22nd, perp walked to the Bermuda County Public Safety Building, posted a rather large bond, and then Meyer Capel entered their appearance on his behalf. Parties, William Brosevich, the then first assistant, agreed to have the Merritt Commission hearings here in Springfield do their course. Evidence was taken, took about a year, and subsequently Mr. Linsardius attended his resignation. So he was on for 13 years, attended his resignation. By the time of trial, after Meyer Capel withdrew, and I took the case last year, Mr. Brosevich was injured and unable to go further, and that's the reason Sarah Carlson and Ryan Thomas was there. Throughout this whole process, Rainier Brenegar agreed that probation would be the offer to a Class II felony, to indicate your question on how that happened. But I'm suggesting as well that had Shad Edwards or Master Sergeant Thomas had said, no, you can't get involved in this in any way. She's your ex-girlfriend. You've got to leave her alone, no matter what. You've got to leave her alone. From Sergeant's testimony about the 50 alcohol-related traffic deaths that he handled, to me, at least from the demeanor that was observed, I think, by the jury, indicated that for him and a lot of police officers, DUI prosecution and arrest is well beyond just part of their job. So certainly he showed poor judgment. Certainly he engaged in behavior that, if it was under the light of day, certainly would make the Illinois State Police look bad. But the facts are, he testified to this. Under stress, law enforcement, just like nurses and ER doctors, they say things that they shouldn't, that they don't really mean, because of the stress and because of what they've seen and what their job entails. It's the reason we let them retire at 20 years. They just can't do it much anymore. This case, and again, Rainier Brenegar is the state's attorney. Keith Lynn Sargent's father was the old sheriff who was prosecuted by the state's attorney's office when a different party became in power. It's a game they played for me and Ken. If that is up, counsel, thank you for your presentation. Mr. Manchin, we'll take this matter into advisement. We recess for a few moments.